`UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| |
|---|
| AARP, |
|       Plaintiff, |
|       v. |
| MICHAEL SYCLE, |
|       Defendant. |

Civil Action No. 13-0608 (CKK)

**MEMORANDUM OPINION**
(November 27, 2013)

Plaintiff AARP ("AARP") filed suit against Defendant Michael Sycle ("Sycle") on April 30, 2013 alleging trademark counterfeiting and infringement under the Lanham Act and District of Columbia law. *See* Compl., Dkt. No. [1]. Although properly and timely served with the Complaint and Summons, Defendant failed to respond to the Complaint, and the Clerk of the Court, upon motion by Plaintiff, entered default against Defendant on July 19, 2013. *See* Clerk's Entry of Default as to Michael Sycle, Dkt. No [8]. Presently before the Court is Plaintiff's [10] Motion for Default Judgment. Having thoroughly considered Plaintiff's submissions[1], including the attachments thereto, applicable case law, statutory authority, and the record of the case as a whole, the Court shall GRANT IN PART AND HOLD IN ABEYANCE IN PART Plaintiff's [10] Motion for Default Judgment.

**I. BACKGROUND**

Plaintiff filed a Complaint in the above-captioned case on April 30, 2013, alleging (1)

---

[1] Compl., ECF No. [1]; Pl.'s Mot. for Default J., ECF No. [10] ("Pl.'s Mot."); Mem. of Law in Supp. of Pl.'s Mot. for Default J., ECF No. [10] ("Pl.'s Mem."); Decl. of Mary D. Hallerman in Supp. of Pl.'s Mot. for Default J., ECF No. [10-1] ("Hallerman Decl.").

trademark counterfeiting, trademark infringement, unfair competition, false designation of origin, and false advertising under the Lanham Act, 15 U.S.C. §§ 1114, 1125, and (2) trademark infringement, unfair competition, and false designation of origin under District of Columbia common law. Compl. ¶¶ 24-37. Plaintiff is a non-profit organization with its principal place of business in Washington, D.C. that works to promote the interests of persons age 50 and over. *Id.* ¶¶ 7-8. As is relevant to the instant case, Plaintiff is the owner of all rights in and to several trademarks relating to insurance and insurance-related services (Reg. Nos. 1,046,998; 1,335,496; 2,461,155; 3,236,039; 3,493,206) (hereinafter "AARP Marks"). Pl.'s Mem. at 1; *see also* Compl. ¶ 11. Through its licensees, Plaintiff offers a wide variety of products and services under the AARP mark, including insurance. Compl. ¶ 9. Plaintiff receives royalties from the use of its marks in connection with the sale of insurance. *Id.* ¶ 10.

Defendant is an insurance broker operating under the name M&G Insurance Group, Inc. *Id.* ¶ 2. According to Plaintiff's Complaint, Defendant uses "AARP" to advertise and promote his insurance business without Plaintiff's permission. *Id.* ¶¶ 3, 13. Despite the fact that he does not sell AARP-branded insurance, Defendant falsely offers to sell "AARP Life Insurance" on his website, alifetimeinsurance.com. *Id.* ¶¶ 13-14. He has also falsely advertised his ability to sell "AARP Life Insurance" through Internet advertisements and YouTube videos directing viewers to his website and toll-free telephone number. *Id.* ¶¶ 14-16.

Prior to initiating this litigation, Plaintiff demanded that Defendant cease his use of the AARP Marks. *Id.* ¶ 17. However, even after being contacted by Plaintiff, Defendant continued to use Plaintiff's AARP Marks to promote his insurance business and create the false impression that his company sells AARP-branded insurance. *Id.* ¶¶ 17-18. Consequently, Plaintiff commenced this trademark counterfeiting and infringement action on April 30, 2013. Defendant

was served with the Complaint and Summons on June 14, 2013 and was therefore required to respond by July 5, 2013. *See* Return of Service/Affidavit, Dkt. No. [5]; *see also* Pl.'s Mot. for Entry of Default, Dkt. No. [6]. Defendant failed to file an answer or otherwise respond to Plaintiff's Complaint, and Plaintiff moved for entry of default as to Defendant. *See* Pl.'s Mot. for Entry of Default, Dkt. No. [6]. On July 19, 2013, the Clerk of the Court entered default against Defendant. *See* Clerk's Entry of Default as to Michael Sycle, Dkt. No. [8]. Plaintiff now moves for entry of default judgment. *See* Pl.'s Mot. As of the date of Plaintiff's motion, Defendant continued to employ AARP marks on his website and maintain YouTube videos falsely advertising that his company offers AARP-branded insurance.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 55(a) provides that the Clerk of the Court must enter a party's request for a default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). After a default has been entered by the Clerk, a party may move the court for a default judgment. Fed. R. Civ. P. 55(b)(2). "The determination of whether default judgment is appropriate is committed to the discretion of the trial court." *Int'l Painters & Allied Trades Indus. Pension Fund v. Auxier Drywall, LLC*, 531 F. Supp. 2d 56, 57 (D.D.C. 2008) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)).

Upon entry of default by the clerk of the court, the "defaulting defendant is deemed to admit every well-pleaded allegation in the complaint." *Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co., Inc.*, 239 F.Supp.2d 26, 30 (D.D.C. 2002) (internal citation omitted). "Although the default establishes a defendant's liability, the court is required to make an independent determination of the sum to be awarded unless the amount of damages is

3

certain." *Id.* (citing *Adkins v. Teseo*, 180 F.Supp.2d 15, 17 (D.D.C. 2001)). Accordingly, when moving for a default judgment, the plaintiff must prove its entitlement to the amount of monetary damages requested. *Id.* "In ruling on such a motion, the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment." *Id.*

### III. DISCUSSION

#### A. Liability

Where, as here, there is a complete "absence of any request to set aside the default or suggestion by the defendant that it has a meritorious defense, it is clear that the standard for default judgment has been satisfied." *Auxier Drywall, LLC*, 531 F.Supp.2d at 57 (internal quotation marks omitted). The Clerk of the Court has entered Defendant's default, and the factual allegations in the Complaint are therefore taken as true. *R.W. Amrine Drywall Co., Inc.*, 239 F.Supp.2d at 30. The Court finds that Plaintiff's Complaint sufficiently alleges facts to support Plaintiff's claims of (1) trademark counterfeiting, trademark infringement, unfair competition, false designation of origin, and false advertising under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, and (2) trademark infringement, unfair competition, and false designation of origin under District of Columbia common law.

To prevail on a claim for federal trademark infringement, unfair competition, and false designation of origin, "the plaintiff must show (1) that it owns a valid trademark, (2) that its trademark is distinctive or has acquired a secondary meaning, and (3) that there is a substantial likelihood of confusion between the plaintiff's mark and the alleged infringer's mark." *Globalaw Ltd. v. Carmon & Carmon Law Office*, 452 F.Supp.2d 1, 26-27 (D.D.C. 2006)

4

(internal quotation marks omitted).[2] Plaintiff's District of Columbia common law claims are evaluated under this standard as well. *See Breaking the Chain Foundation, Inc. v. Capitol Educational Support, Inc.*, 589 F.Supp.2d 25, 29 (D.D.C. 2008). *See also Ward One Democrats, Inc. v. Woodland*, 898 A.2d 356, 361 (D.C. 2006). By default, Defendant admits that Plaintiff has valid Marks that have a secondary meaning and that there is substantial likelihood of confusion. *See* Compl. at ¶¶ 24-32.

Similarly, to establish false advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), Plaintiff must show that Defendant's advertising was (1) false or misleading, (2) actually or likely deceptive, (3) material in its effect on buying decisions, (4) connected with interstate commerce, and (5) actually or likely injurious to plaintiff. *Aristotle Int'l, Inc. v. NGP Software, Inc.*, 714 F.Supp.2d 1, 6 (D.D.C. 2010). By default, Defendant has admitted that his advertising was false or misleading, deceptive, likely to influence the purchasing decision, made in interstate commerce, and likely injurious to Plaintiff. *See* Compl. at ¶¶ 24-32.

Finally, to establish trademark counterfeiting, Plaintiff must show that Defendant infringed a registered trademark in violation of 15 U.S.C. § 1114(1)(a) and that Defendant "intentionally us[ed] a mark . . . , knowing such mark . . . is a counterfeit mark." 15 U.S.C. § 1117(b); *see also Lifted Research Group, Inc. v. Behdad, Inc.*, 591 F.Supp.2d 3, 7 (D.D.C. 2008); *Babbit Elec., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1181 (11th Cir. 1994). As discussed, *supra*, Plaintiff has established that Defendant infringed Plaintiff's registered trademarks. On the issue of intentional use of such mark knowing such mark is counterfeit, Defendant has admitted

---

[2] While Plaintiff "may appear to internally allege many different grievances, i.e., trademark infringement, false designation of origin . . . and unfair competition – courts have announced that the elements for each of the aforementioned causes-of-action mirror those for a claim of trademark infringement." *Globalaw Ltd.*, 452 F.Supp.2d at 26.

this fact by default. *See* Compl. ¶19. Furthermore, Defendant's willfulness is shown by the fact that he had actual knowledge of Plaintiff's trademark registrations for its marks, and yet continued to use the AARP Marks to sell insurance services after receipt of a demand letter from Plaintiff and after the commencement of this action. *See* Pl.'s Mem. at 3.

**B. Appropriate Relief**

Plaintiff requests relief in the form of injunctive relief and monetary damages, including attorneys' fees and costs. The Court addresses each of these requests below.

**1. Injunction**

Plaintiff requests the Court permanently enjoin Defendant from infringing Plaintiff's marks. Pl.'s Mot. at 1. A district court has authority under the Lanham Act to grant injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable" to prevent further violation of Plaintiff's trademark rights and copyrights. 15 U.S.C. § 1116(a). "In determining whether to enter a permanent injunction, the Court considers a modified iteration of the factors it utilizes in assessing permanent injunctions: (1) success on the merits, (2) whether the plaintiffs will suffer irreparable injury absent an injunction, (3) whether, balancing the hardships, there is harm to defendants or other interested parties, and (4) whether the public interest favors granting the injunction." *American Civil Liberties Union v. Mineta*, 319 F.Supp.2d 69, 87 (D.D.C. 2004).

As discussed, *supra*, Plaintiff has succeeded, by default, on the merits of the instant action. On the issue of irreparable injury, Plaintiff has shown, in its Motion for Default Judgment and the attached affidavits, that Defendant has continued to use the AARP Marks to sell insurance services, despite issuance of a demand letter and filing of the instant lawsuit. *See* Pl.'s Mem. at 3. "Generally, trademark infringement, by its very nature, carries a presumption of

harm." *Hanley-Wood LLC v. Hanley Wood LLC*, 783 F.Supp.2d 147, 151 (D.D.C. 2011) (citing *Health Ins. Ass'n of America v. Novelli*, 211 F.Supp.2d 23, 28 (D.D.C. 2002)). Moreover, "Defendant's continuing disregard for Plaintiff's rights demonstrates that Defendant will continue to infringe on Plaintiff's rights, absent an injunction. This finding alone entitles Plaintiff to a permanent injunction." *Lifted Research Group*, 591 F.Supp.2d at 8 (D.D.C. 2008). The Court further finds that an injunction would not harm others, and that the public interest favors protecting against further violation of federal trademark law. Accordingly, the Court concludes that Plaintiff is entitled to a permanent injunction against Defendant's infringement of its Marks, as requested in its Motion for Default Judgment.

   **2. Monetary Damages**

Plaintiff requests that the Court award it $2,000,000 in statutory damages for violations of the Lanham Act. Pl.'s Mem. at 18-21. The Lanham Act provides for statutory damages of not less than $1,000 or more than $200,000 per counterfeit mark per type of goods, with an increased limit of $2,000,000 for willful infringement. 15 U.S.C. § 1117(c). In general, "statutory damages are appropriate in default judgment cases because the information needed to prove actual damages is within the infringer's control and is not disclosed." *Microsoft Corp. v. McGee*, 490 F.Supp.2d 874, 882 (S.D. Ohio 2007) (collecting cases). Here, since Sycle "has not responded to the Complaint or otherwise participated in litigation of this case, actual damages are difficult to determine. Thus, [AARP] has appropriately requested statutory damages." *Lifted Research Group, Inc. v. Behdad, Inc.*, No. 08-390, 2010 WL 2662277, at *3 (D.D.C. June 30, 2010). Nevertheless, when moving for a default judgment, the plaintiff must still prove its entitlement to the amount of monetary damages requested. *R.W. Amrine Drywall Co., Inc.*, 239 F.Supp.2d at 30.

7

"Courts have substantial discretion in awarding statutory damages." *Lifted Research Group*, 2010 WL 2662277, at *4 (citing *Microsoft Corp v. Compusource Distribs, Inc.*, 115 F.Supp.2d 800, 811 (E.D. Mich. 2000)). Indeed "the statute does not provide guidelines for courts to use in determining an appropriate award," *Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F.Supp.2d 567, 583 (E.D. Pa. 2002), but rather leaves it to each court's discretion to award an amount it "considers just," 15 U.S.C. § 1117(c)(2).

"In the absence of any guidelines for determining the appropriate award for willful trademark infringement," courts outside this circuit "have looked for guidance to the better developed case law for willful copyright infringement." *Lyons Partnership, L.P. v. D & L Amusement & Entertainment, Inc.*, 702 F.Supp.2d 104, 117 (E.D.N.Y. 2010). In these copyright cases, courts have generally considered the following factors: (1) expenses saved and profits reaped; (2) the revenue lost by the plaintiffs; (3) the value of the copyright or trademark; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant cooperated in providing particular records from which to assess the value of the infringing material product; and (7) the potential for discouraging the defendant. *Tiffany (NJ) Inc. v. Luban*, 282 F.Supp.2d 123, 125 (S.D.N.Y. 2003) (citing *Fitzgerald Publishing Co., Inc. v. Baylor Publishing Co.*, 807 F.2d 1110, 1117 (2d Cir. 1986)). "The Supreme Court has held that deterrence of future infringement is an important factor in determining damages under the Copyright Act, and therefore an award of statutory damages need not equal the amount of a plaintiff's actual damages." *Philip Morris USA, Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494, 501 (C.D. Cal. 2003) (citing *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233, 73 S.Ct. 222, 97 L.Ed. 276 (1952)). Similarly, "[s]tatutory damages under the Lanham Act serve to compensate trademark holders for their

losses *and deter wrongful conduct.*" *Lifted Research Group*, 2010 WL 2662277, at *4 (emphasis added) (citing *PetMed Express, Inc. v. MedPets.com, Inc.,* 336 F.Supp.2d 1213, 1220-21 (S.D. Fla. 2004)).

Here, Plaintiff seeks the maximum damages permitted under the statute – $2,000,000.[3] As an initial matter, Plaintiff has established that Defendant's infringement of its marks is willful, making the higher $2,000,000 maximum amount applicable here. *See Louis Vuitton Malletier & Oakley*, 211 F.Supp.2d at 583 ("Willfulness can be inferred by the fact that a defendant continued infringing behavior after being given notice."). However, Plaintiff has provided little else in support of this request for the maximum amount of statutory damages. The Court recognizes the difficulty encountered by Plaintiff due to Defendant's failure to take part in this matter. Since Defendant has refused to participate in this litigation and has not provided any information to Plaintiff or the Court regarding his sales, revenues, profits or expenses, Plaintiff lacks the ability to make detailed estimates of Defendant's gains.

Nevertheless, Plaintiff's present showing is clearly lacking. In ruling on a motion for default judgment "the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment." *Auxier Drywall, LLC*, 239 F.Supp.2d at 30. Here, the affidavit and documentary evidence accompanying Plaintiff's motion contain only one fact concerning the scope of Defendant's business. Plaintiff points to a YouTube video uploaded by Defendant which falsely advertises AARP Life Insurance and encourages viewers to

---

[3] Although 15 U.S.C. § 1117(c) authorizes "not more than $2,000,000 per counterfeit mark" and Plaintiff has identified five federally registered trademarks, Plaintiff appears not to be seeking $2,000,000 for *each* of these insurance related trademarks. Rather, Plaintiff refers to $2,000,000 – the amount it requests – as "maximum statutory damages" implying that it views one generalized counterfeit mark at issue here – Defendant's use of the "AARP" designation. Accordingly, the Court considers $2,000,000 and not $10,000,000 as the applicable statutory maximum here.

visit his website and call his toll-free telephone number. Pl.'s Mem. at 19; Hallerman Decl. ¶ 13; *id.,* Exhibit H (screenshot of YouTube video). In arguing for the maximum statutory award, Plaintiff cites the fact that this video has had approximately 65,000 views since being published on July 31, 2012. *Id.* Plaintiff's affidavits and documentary evidence provide no other evidence from which the Court can estimate the scope of Defendant's gains. To be sure, Plaintiff's Motion points to additional facts – namely that Defendant has stated on his MySpace page that his website generated 300 leads per month for 20 months – but these statements are not supported by either an affidavit or documentary evidence in the record. Compl. ¶ 20; Pl.'s Mem. at 19. Accordingly, they cannot form the basis of the Court's award of statutory damages.[4] Similarly, Plaintiff's Motion and Complaint state that "[o]n information and belief, Defendant and certain of the insurance companies with which he is connected, have made substantial monies through Defendant's unauthorized and intentionally deceptive use of Plaintiff's AARP Marks." Compl. ¶ 22; Pl.'s Mem. at 19. Again, this statement is not shown by affidavits or documentary evidence and cannot form the basis of the Court's award of damages. Furthermore, even if it were, Plaintiff never identifies these insurance companies connected with Plaintiff, estimates how many insurance companies are connected with Plaintiff, or states an approximate number of new customers who have signed up for these companies since Defendant's infringing activity began. While the Court recognizes that Plaintiff may lack some of this information due to Defendant's non-participation, some additional information, not all of which is concealed by Defendant, would prove extremely useful in determining an appropriate level of statutory

---

[4] The Court notes that this information, if included in a revised affidavit, could be supplemented by information in Plaintiff's possession or in the public domain that would help provide a better estimate of reasonable statutory damages. For example, the conversion rate on advertising used by other insurance websites, or websites generally, could provide some estimate of the number of interested users who eventually enroll in one of Defendant's insurance products.

damages.

Moreover, there is significant information in Plaintiff's control that could be useful in setting the amount of statutory damages here. Most obviously, the Court has no sense of Plaintiff's licensing fees and royalties related to the use of its marks, which could provide a clearer sense of the amount of revenue lost by Plaintiff and its licensees. All Plaintiff offers in support of damages on this point is the statement in its Complaint that "Plaintiff's licensees have spent significant money in advertising and promoting insurance under AARP's marks and Plaintiff has received substantial royalties from its licensees." Pl.'s Mem. at 20 (citing Compl. ¶ 10). This statement is plainly inadequate. First, it provides no estimate of the amount of funds spent in support of and received due to the marks at issue. Second, as noted above, since this statement does not appear in an affidavit and is not shown by documentary evidence, it is not properly considered in assessing the amount of damages here. *See Auxier Drywall, LLC*, 239 F.Supp.2d at 30 ("In ruling on such a motion, the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment.").

The paucity of the record is particularly glaring given that Plaintiff is seeking the maximum amount of statutory damages. In other cases where judges have awarded the maximum penalty permitted under the statute "there was reason to believe that the defendant's sales were substantial." *Tiffany (NJ) LLC v. Dong*, No. 11-2183, 2013 WL 4046380, at *6 (S.D.N.Y. Aug. 9, 2013) (citing *Gucci Am. Inc. v. Curveal Fashion,* No. 09-8458, 2010 WL 308303, at *5 (S.D.N.Y. Jan 20, 2010); *Nike, Inc. v. Top Brand Co.*, No. 00-8179, 2006 WL 2946472, at *3 (S.D.N.Y. Feb. 27, 2006); *Gucci Am., Inc. v. Duty Free Apparel Ltd.*, 315 F.Supp.2d 511, 521-22 (S.D.N.Y. 2004)). For example, in *Nike*, the court focused on evidence of "the size of the defendant's infringing operations, which led to the production of millions of

11

infringing goods." *Nike*, 2006 WL 2946472, at *2. Similarly, in *Philip Morris USA*, 219 F.R.D. at 501-502, the court awarded $2,000,000 in statutory damages where the defendant willfully imported 8,000,000 counterfeit cigarettes having a street value of millions of dollars.

By contrast, where there is limited evidence of the large extent of the Defendant's operations and profits, a large award of statutory damages appears less appropriate. *See Sennheiser Electronic Corp. v. Bielski*, No. 11-7892, 2012 WL 2006011, at *3 (C.D. Cal. June 4, 2012) ("Although Plaintiffs' exact damages cannot be determined because of Defendant's failure to take part in the present litigation, such a steep award is clearly excessive, and does not bear a plausible relationship to Defendant's profits from infringement."); *E.I. DuPont de Nemours and Co. v. Drabek*, No. 12-10574, 2013 WL 4033630, at *7 (C.D. Cal. May 3, 2013) ("Plaintiff has presented no evidence regarding the extent of sales and no evidence that Defendant sold infringing products to a wide market.")

Consequently, although Plaintiff need not prove its actual damages under 15 U.S.C. § 1117(c), here the Court lacks even the most basic estimates as to an appropriate amount of statutory damages. Furthermore, there is insufficient evidence that the scope of Defendant's operation matches that of past infringers against whom courts have imposed the maximum statutory award. Accordingly, in light of the limited evidence presented by Plaintiff in support its claim for the maximum amount of statutory damages, the Court will hold Plaintiff's request for statutory damages in abeyance. If Plaintiff continues to seek statutory damages pursuant to 15 U.S.C. § 1117(c), it shall submit further briefing by no later than December 20, 2013 setting out, if necessary, a revised estimate for these damages that more reasonably reflects all available information relevant to the seven factors identified above. If Plaintiff is unable to obtain certain potentially useful information due to Defendant's intransigence, it should indicate how it has

sought to obtain this information and why Defendant's actions have blocked its acquisition. Plaintiff will not be permitted to submit additional briefing on this subject after this date, and the Court will make its ruling as to statutory damages on the record as it exists on this date.

### 3. Attorneys' Fees

Finally, AARP has requested attorneys' fees and costs in this matter. The Lanham Act permits a plaintiff to recover "the costs of the action," but provides for the award of reasonable attorneys' fees to the prevailing party only "in exceptional cases." 15 U.S.C. § 1117(a). Although the Act itself does not define the term "exceptional," courts have generally held that willful infringement by the defendant constitutes an "exceptional case[]" under the Act for which attorneys' fees may be awarded. *See ALPO Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958, 961 (D.C. Cir. 1990) ("Attorneys' fees . . . are available under section 35(a) only 'in exceptional cases,' which this court has defined as cases involving willful or bad-faith conduct."); *Lindy Pen. Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1409 (9th Cir. 1993) ("[G]enerally a trademark case is exceptional for purposes of an award of attorneys' fees when the infringement is malicious, fraudulent, deliberate or willful."); *Microsoft Corp. v. Black Cat Computer Wholesale*, 269 F.Supp.2d 118, 124 ("A willful infringement may be considered an exceptional case under the Lanham Act.") (citing *Bambu Sales, Inc. v. Ozak Trading, Inc.*, 58 F.3d 849, 854 (2d Cir. 1995). Here, as discussed, Defendant's infringing actions were willful and thus awarding reasonable attorneys' fees and costs is appropriate under the Lanham Act. Plaintiff shall submit the appropriate documentation of these fees and costs for the Court's review by no later than December 20, 2013.

### IV. CONCLUSION

For the foregoing reasons, the Court shall GRANT IN PART AND HOLD IN

ABEYANCE IN PART Plaintiff's [10] Motion for Default Judgment. Specifically, the Court grants Plaintiff's motion as to liability and its request for injunctive relief and reasonable attorneys' fees and costs. The Court holds in abeyance Plaintiff's motion as to its request for statutory damages pursuant to 15 U.S.C. § 1117(c). Plaintiff shall file with the Court, no later than December 20, 2013, supplemental briefing setting out additional evidence, via affidavits and documentary evidence, supporting its request for statutory damages. This supplemental briefing should also contain the appropriate documentation as to Plaintiff's request for attorneys' fees and costs. An appropriate Order accompanies this Memorandum Opinion.

*/s/*
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE